U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2011 JUN 16  PM 1: 25

CLERK
BY ___PM___
DEPUTY CLERK

CORINA P. SIMPSON,                    )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )     Case No. 5:10-cv-72
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR REVERSAL AND REMAND OF**
**COMMISSIONER'S DECISION, AND**
**GRANTING COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 9, 13)

This matter comes before the court on the motion by Corina P. Simpson ("Plaintiff") seeking review of the decision of Defendant, the Commissioner of Social Security ("Commissioner").   Plaintiff seeks an order reversing the Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, and a remand of the case for payment of benefits.  The Commissioner asks that the Commissioner's decision be affirmed, pursuant to 42 U.S.C. § 405(g) of the Social Security Act.  The parties completed briefing on March 21, 2011.

At issue in this case is whether substantial evidence supports the findings of the Administrative Law Judge ("ALJ") regarding Plaintiff's residual functional capacity ("RFC"), credibility, and ability to perform her past relevant work.

Plaintiff is represented by Phyllis E. Rubenstein, Esq.  The Commissioner is represented by AUSA Melissa A.D. Ranaldo.

## I.      Factual and Procedural Background.

Plaintiff is an approximately thirty-year old individual with a GED and two years of college education.  She has previously worked in fast food restaurants, in data entry, as a housekeeper, and as a grocery store cashier.

Plaintiff filed for SSDI and SSI benefits on February 7, 2008, alleging disability as of April 30, 2006 due to cutaneous lupus, arthritis in her right knee, tendinitis, migraine headaches, bipolar disorder, social anxiety disorder, insomnia, and obesity.  Her claim was denied both at the initial level and on review by a Federal Reviewing Official.  Plaintiff subsequently requested a hearing, which took place via videoconference before ALJ Thomas Merrill on October 21, 2009.  At the hearing, Plaintiff and a vocational expert testified.

### A. The ALJ's Decision.

On November 9, 2009, the ALJ issued a decision finding that Plaintiff was not disabled.  Applying the five-step analysis employed by the Commissioner to ascertain whether a claimant is disabled under the Social Security Act,[1] the ALJ determined at step

---

[1] The five-step analysis is conducted as follows:

The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart],* 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

one that Plaintiff had not engaged in substantial gainful activity since April 30, 2006. At step two, the ALJ found that Plaintiff suffered from the severe impairments of lupus, obesity, and a mood disorder, including symptoms such as attention-seeking behavior, mood swings, social anxiety, and hyperactivity.

At the third step, the ALJ found that Plaintiff experienced mild restrictions in activities of daily living and mild difficulties in social functioning. He also found that Plaintiff had mild difficulties with concentration. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the "Listings."

The ALJ next determined that Plaintiff had the RFC to perform a range of work at the medium work level,[2] and that Plaintiff had a mild impairment with activities of daily living that limited her ability to deal with the general public.

---

*Zokaitis v. Astrue*, 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

[2] The regulations state: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). Finally, sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

At step four, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. The ALJ then examined whether the intensity, persistence, and limiting effects of those symptoms impacted Plaintiff's ability to perform basic work activities. In this regard, the ALJ evaluated Plaintiff's statements regarding limitations in her physical and mental abilities, and found her statements were not credible. In assessing opinion evidence, the ALJ gave "great weight" to the opinions of Plaintiff's treating physician, Dr. Michael Rapaport; her mental health counselor, Lindsay Dunn; the state agency medical examiner, Dr. Leslie Abramson; and the state agency psychologist, Dr. Edward Hurley. The ALJ found that each of their opinions was supported by and consistent with the evidence of record, and collectively supported the proposition that Plaintiff had the RFC to perform a range of work at the medium work level, with a mild impairment that limited her ability to deal with the general public.

Proceeding to the fifth step of the disability analysis, the ALJ found that Plaintiff was capable of performing her past relevant work as a fast food worker, housekeeper, grocery store cashier, and data entry clerk, which did not require the performance of work-related activities precluded by her RFC. The ALJ also determined that other jobs existed in significant numbers in the national economy that Plaintiff could perform. Considering an individual with Plaintiff's age, education, work experience, RFC, and additional limitations, the ALJ found Plaintiff was not disabled according to the "Grids," 20 C.F.R. Part 404, Subpart P, Appendix 2. In the alternative, relying on testimony by a vocational expert who stated that janitorial and cashier positions existed for individuals with Plaintiff's age, education, work experience, RFC, and limitations, the ALJ concluded that Plaintiff could perform and successfully adjust to other jobs that exist in significant numbers in the national economy, and that she was not disabled.

When the Decision Review Board did not complete its review of the ALJ's decision within the ninety-day period required by the regulations, the ALJ's decision became final. Plaintiff filed her Complaint on April 6, 2010, pursuant to 42 U.S.C. §

405(g), which gives this court jurisdiction to review final decisions of the Commissioner denying benefits under the Social Security Act.

## II.   Analysis and Conclusions of Law.

### A.   Standard of Review.

In reviewing the Commissioner's decision, the court conducts a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citation omitted). The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached," *Barbato v. Astrue*, 2010 WL 2710521, at *1 (W.D.N.Y. July 7, 2010) (internal quotation marks and citation omitted), and must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence. *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008) (quotation marks and citation omitted).

An ALJ must set forth his or her findings with "sufficient specificity" to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks and citation omitted). It thus must be "'more than a mere scintilla'" of evidence scattered throughout the record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)). If supported by substantial evidence, the court "must afford the Commissioner's determination considerable deference, and may not substitute 'its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" *Sanderson v. Astrue*, 2011 WL 1113856, at *2 (N.D.N.Y. Jan. 19, 2011) (quoting *Valente v. Sec'y of HHS*, 733 F.2d 1037, 1041 (2d Cir. 1984)). Accordingly, a court should "reverse an administrative determination only when it does not rest on adequate findings sustained by

evidence having 'rational probative force.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consol. Edison Co.*, 305 U.S. at 230).

## B. Whether Substantial Evidence Supports the ALJ's RFC Finding.

An ALJ's evaluation of a claimant's RFC is a key component of the disability determination. The regulations define RFC as the most that a claimant can do in a work setting, despite all of the claimant's mental and physical limitations. 20 C.F.R. § 404.1545(a)(1); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 309 (E.D.N.Y. 1997) (stating that the RFC is "an administrative assessment of the extent to which a claimant's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations that may affect the claimant's capacity to perform work-related physical or mental activities.") (citation omitted). Plaintiff challenges the ALJ's RFC findings regarding her work and mental limitations.

### 1. Plaintiff's Work Limitations.

Plaintiff first contends that the ALJ erred in assessing her RFC at the medium work level based on the opinion of a non-treating agency physician. She adds that her many physical ailments do not support the ALJ's RFC finding. The Commissioner responds that substantial evidence in the record supports the ALJ's findings that Plaintiff could physically perform a range of medium, light, and sedentary work.

Plaintiff's treatment providers imposed no permanent work limitations on Plaintiff's activities. At most, one of Plaintiff's treating physicians, in 2006, completed a temporary medical deferment form indicating back and knee pain, but still permitted Plaintiff to work twenty hours a week for three months. None of Plaintiff's providers completed a physical RFC assessment form. The agency physician, Dr. Abramson, completed an RFC form on April 14, 2008 and opined that tests assessing Plaintiff's lupus showed no evidence of systemic disease and that her rash from lupus was inactive due to medication. She also cited Plaintiff's November 2007 examination by a rheumatologist for joint pain which showed no inflammatory changes, with no follow-up recommended. She concluded that Plaintiff's allegation of limitations in all work activities was not supported by medical evidence, was "not felt to be credible"

6

(Administrative Record ["AR"] 486), and that Plaintiff could sustain work at the medium work level with no postural limitations.  Two other agency physicians, Dr. Michael Perll and Dr. Christine Conley, reviewed Dr. Abramson's physical RFC assessment, and agreed with Dr. Abramson's findings.  None of Plaintiff's treating sources opined to the contrary.

The ALJ properly considered the agency physicians' findings that Plaintiff had the RFC to perform a range of work at the medium work level.  *See* 20 C.F.R. § 404.1527(f) (providing that an ALJ may consider "all evidence from nonexamining sources to be opinion evidence.").  Moreover, the agency physicians' findings do not conflict with any record evidence.  *See* Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (stating that opinions from agency medical consultants, who are "highly qualified" and "experts in the evaluation of the medical issues in disability claims," can be "given weight only insofar as they are supported by evidence in the case record[.]").  The agency physicians' reports are also consistent with each other.  *See* 20 C.F.R. § 404.1527(d)(4) (giving more weight to opinions that are consistent with the record as a whole).  The objective medical evidence in the record thus supports the ALJ's RFC finding.[3]

### 2. Plaintiff's Mental Limitations.

Plaintiff relies primarily on her mental health limitations as support for her contention that she is disabled.  She advances two arguments to support her contention that the ALJ erred in assessing her mental RFC.  First, she contends that the ALJ erred when he ignored Ms. Dunn's June 2008 opinion and relied instead on other "isolated" opinions from Ms. Dunn as well as a May 2008 opinion of Dr. Hurley, a non-treating agency psychologist.  Second, she claims that the ALJ should have evaluated her

---

[3] Numerous references in the record indicate the Plaintiff's lupus was controlled by medication. *See* AR 232, 248, 257, 260-261, 395, 630.  In addition, in terms of Plaintiff's ability to lift, Plaintiff indicated on a Disability Report that she carried coffee urns that weighed about 25 pounds, and frequently lifted "50 lbs. or more."  (AR 171.)  The record is also replete with references that Plaintiff could spend long hours, up to eight or nine hours at a time, sitting at a computer.  (AR 246, 617, 618.)

aspirations (her professed desire to work in the theater, to be a writer, and a college-level educator) in light of her mental health diagnoses of grandiosity and flights of fancy. The Commissioner counters that the ALJ considered Ms. Dunn's June 2008 report, as well as Plaintiff's successful pursuit of her career aspirations, and thus the evidence regarding Plaintiff's mental RFC was properly evaluated.

On June 11, 2008, Ms. Dunn completed a document entitled "Evaluation Form for Affective Disorders (12.04) and Personality Disorders (12.08)." (AR 540-546.) On the form, she noted that Plaintiff had been diagnosed with narcissistic personality disorder, major depressive disorder that was recurrent and mild, and "rule out" bipolar disorder. The form contained a standardized list that tracked the requirements for affective disorders, found in § 12.04 of the Listings, to assist in determining whether a claimant's mental impairment was severe and, if so, whether it constituted an affective disorder[4] under the Listings. Ms. Dunn checked off items indicating that Plaintiff showed marked or extreme difficulties in her daily living activities (in the categories of grooming, personal hygiene, maintenance, paying bills, and planning daily activities) and in social functioning (getting along with family, friends, neighbors, and strangers, showing consideration for others, displaying awareness of others' feelings, cooperating with others, initiating social contact, exhibiting social maturity, cooperating with co-workers, responding to those in authority, establishing interpersonal relationships, holding a job, and interacting and actively participating in group activities). Rather than ignoring Ms. Dunn's June 2008 evaluation, the ALJ specifically referred to it, both at step two, when he considered the severity of Plaintiff's mood disorder, and later when he assessed

---

[4] Listings § 12.04, entitled "Affective Disorders," describes a family of affective disorders— including depressive syndrome, manic syndrome, and bipolar syndrome—and sets forth a test to assess whether a claimant's disorder meets the required level of severity to be considered disabling. A claimant must show "[m]edically documented persistence, either continuous or intermittent" of depressive syndrome, manic syndrome, or bipolar syndrome, that results in at least two of the following: marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, or repeated episodes of decompensation. In the alternative, a claimant can show a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities[.]" Listings § 12.04, ¶¶ A, B, C.

Plaintiff's mental RFC and found she had a mild impairment with activities of daily living that limited her ability to deal with the general public. *See* AR 18, 23.

Plaintiff essentially argues that the ALJ erred in not giving Ms. Dunn's June 2008 evaluation controlling weight. However, in disability determinations, the only opinions accorded controlling weight are those offered by a claimant's treating physician, pursuant to the treating physician rule. That rule provides that the opinion of a claimant's treating physician regarding the nature and severity of an impairment is entitled to controlling weight, provided it is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(d)(2). The treating physician's rule is inapplicable here because a mental health counselor such as Ms. Dunn is not considered an "acceptable medical source" under the regulations. *See* 20 C.F.R. § 404.1513(a). Rather, she is an "other source," pursuant to 20 C.F.R. § 404.1513(d)(1), which allows her opinions to be considered but not accorded controlling weight.[5] The ALJ neither erred in failing to adopt Ms. Dunn's June 2008 evaluation nor in failing to give it controlling weight. *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 126 (N.D.N.Y. 2010) ("The opinions of 'other sources' are never entitled to controlling weight" in disability benefits determinations) (citations omitted)).

In addition, the marked and extreme limitations concerning Plaintiff's mental impairments that Ms. Dunn checked off on the June 2008 form were inconsistent with other evidence supplied by Ms. Dunn. For example, in Ms. Dunn's June 9, 2008 letter, authored two days before she completed the form indicating Plaintiff's marked and extreme limitations in daily living and social functioning, she wrote: "Work environments that may be more suitable for the claimant might involve those that have limited interpersonal interaction, perhaps with computers. I believe [Plaintiff] has the

---

[5] "Acceptable medical sources" who can "provide evidence to establish an impairment" include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a)(1), (2). "Other sources" who can provide evidence concerning the severity of a claimant's impairments are "[m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, . . . and therapists[.])" 20 C.F.R. § 404.1513(d)(1). The ALJ described Ms. Dunn as a "mental health counselor." (AR 23.)

cognitive capacity to work should the environment be as accommodating as possible to her needs, and the [Plaintiff] addresses certain difficulties that have made success difficult thus far." (AR 479-80.) This opinion is consistent with others articulated by Ms. Dunn, wherein she acknowledged that Plaintiff has difficulty with structured work environments, but could work if her limitations were taken into consideration, and where she found that while Plaintiff exhibited some symptoms of depression, personality disorder, and manic syndrome, those symptoms did not constitute a chronic affective disorder that would cause more than a minimal limitation on her ability to do basic work activities. *See, e.g.,* AR 271-272, 291, 478, 546. The ALJ gave these opinions "great weight" because they were "consistent with and supported by the evidence of record." (AR 23.)

The ALJ also did not err in according Dr. Hurley's opinion "great weight." (AR 23.) Dr. Hurley completed a mental RFC assessment and psychiatric review technique form. He opined that Plaintiff was not disabled, that she could follow three to four-step instructions, that she demonstrated no limitations in concentration, but that she should have limited public contact and limited interruptions. Dr. Philip Rosenshield, a second state agency psychologist, reviewed and affirmed Dr. Hurley's report on May 16, 2008. Yet a third state agency psychologist, Dr. Thomas Reilly, reviewed Dr. Hurley's report and an additional report from Plaintiff's "counselor" and affirmed Dr. Hurley's report on July 17, 2008. An ALJ may consider the opinions of non-examining sources, such as agency psychologists, as opinion evidence. 20 C.F.R. § 404.1527(f). The ALJ did not err in finding Dr. Hurley's opinion persuasive, as it was supported by evidence in the record and consistent with other agency psychologists.

Finally, Plaintiff contends that the ALJ should have evaluated her aspirations (her desires to work in the theater, to be a writer, and a college-level educator) in light of her mental health diagnoses of grandiosity and flights of fancy. However, the evidence revealed that Plaintiff was successfully pursuing a teaching career by completing college course work and was preparing for student teaching. Plaintiff had also authored two published books and numerous unpublished books, and was engaged in writing other

books. Plaintiff exhibited a high level of mental functioning in this regard, and the ALJ was entitled to consider those facts. The ALJ's assessment of Plaintiff's mental RFC was therefore supported by substantial evidence.

### 3. Whether the ALJ Erred in Assessing Plaintiff's Credibility.

Plaintiff asserts that the ALJ erred in finding that her testimony concerning her physical and mental limitations was not credible. The Commissioner counters that substantial evidence supports the ALJ's credibility finding.

When evaluating the intensity and persistence of symptoms,[6] to determine how those symptoms limit a claimant's capacity for work, an ALJ is required to make "a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects[.]" SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). In assessing credibility, the ALJ considers several factors, including: the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate the symptoms; and treatment or other measures used to relieve those symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p, 1996 WL 374186, at *3. If the ALJ "decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citations omitted).

Here, the ALJ concluded that Plaintiff's activities of daily living were inconsistent with a finding of total disability. Plaintiff testified to a list of chores she completed on a daily basis, including "scrubbing the bathroom every day, vacuuming, and doing the dishes; she prepares meals for herself and children." (AR 21.) Plaintiff also testified to doing homework for her college courses, working on novels, playing with her children,

---

[6] The regulations provide that, when determining whether a claimant is disabled, the ALJ will consider all of the claimant's symptoms, such as pain, fatigue, and shortness of breath, because symptoms "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone[.]" 20 C.F.R. § 404.1529(c)(3).

shopping, and sewing.  While Plaintiff argues that her few daily activities are "not inconsistent with an inability to engage in full-time work" (Doc. 9-1 at 15), the range of her daily activities supports the ALJ's determination that Plaintiff's claims of severe physical and mental limitations were not credible.  *See Metz v. Astrue*, 2010 WL 2243343, at *14 (N.D.N.Y. Apr. 21, 2010) ("That [Plaintiff] was able to engage in such a wide array of activities despite allegations of severe pain supports the ALJ's conclusion that [Plaintiff's] pain was not disabling.") (citing *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980)).

The ALJ further concluded that Plaintiff's ability to "sustain sitting at a desk typing for extended periods of time is . . . inconsistent with a finding of disability."  (AR 21.)  The record shows that Plaintiff reported that she could work eight or nine hours on the computer when writing her novels.  These facts undercut her testimony that she experienced difficulty in sitting for long periods of time and could only sit comfortably in one spot for half an hour, that she had pain in her wrist and fingers, and that she would have to let her hands rest from three to five hours before she could comfortably resume her work.  *See Yates v. Comm'r of Soc. Sec.*, 2011 WL 705160, at *7 n.3 (N.D.N.Y. Feb. 22, 2011) (observing that a plaintiff's daily activities are "an important indicator of credibility under the regulations[.]").

The ALJ cited objective medical evidence that Plaintiff's lupus and migraines were generally well controlled, and that her providers recommended conservative pain treatment.  This evidence conflicted with Plaintiff's testimony that she suffered from migraines on a daily basis which were sometimes so severe that she could not get out of bed.  It also conflicted with Plaintiff's testimony that she experiences "extreme fatigue, muscle weakness, joint pain, joint swelling" as well as "blisters across any part of my body that gets exposed to the sun[.]"  (AR 39-40.)  Because Plaintiff's testimony conflicted with the objective medical evidence indicating duration, frequency, and intensity of her pain and other symptoms, it was within the ALJ's discretion to discount it.  *See Saxon v. Astrue*, 2011 WL 835895, at *9 (N.D.N.Y. Mar. 4, 2011) ("One strong indication of credibility of an individual's statements is their consistency, both internally

12

and with other information in the case record.") (citing SSR 96-7p, 1996 WL 274186, at
*5).

With regard to Plaintiff's alleged mental impairments, the ALJ cited, and the
record reflects, Plaintiff's refusal of treatment (counseling and prescription medication)
designed to address those impairments.  Plaintiff's rationale for refusing medication was
that, during her "highs," she felt that she was a productive and creative writer, and she
did not want to forego that state by taking medication.  Plaintiff argues that this was a
"justifiable reason for her failure to take medications." (Doc. 14 at 3.)  However, "[t]he
regulations require a claimant to follow prescribed treatment if the treatment can restore
the claimant[']s ability to work, unless the claimant offers an acceptable reason for
noncompliance. 20 C.F.R. § 404.1530 (1996)." *Wyrick v. Apfel*, 29 F. Supp. 2d 693, 698
(M.D.N.C. 1998), *aff'd* 165 F.3d 913 (4th Cir. 1998) (table).  In other words, "a
remediable impairment is not disabling." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d
Cir. 1983) (citing cases).  The ALJ properly considered Plaintiff's refusal of treatment in
determining whether she was disabled. *See* 20 C.F.R. § 404.1529(c)(3)(v), (vi).

The ALJ further supported his credibility determination by record references to
evidence that Plaintiff repeatedly asked her treatment providers to complete disability
paperwork on her behalf. *See Metz*, 2010 WL 2243343, at *13 ("The claimant's
credibility and motivation, as well as the medical evidence of impairment, are used to
evaluate the true extent of the alleged pain and the degree to which it hampers the
applicant's ability to engage in substantial gainful employment.") (citation omitted).  In
October 2006, Plaintiff requested that her treating physician provide an opinion that
Plaintiff was disabled because of her lupus.  The doctor questioned Plaintiff's conclusion
that she was disabled, to which she responded "that because of her education she can only
work in unskilled positions that would possibly exacerbate her lupus and cause her to
prematurely seem old and tired.  She stated that she was interested in a career in theatrics
. . . but that no one would want her as an old and tired actress so she would rather save
herself by applying for disability." (AR 22, 232.)  In December 2007, Plaintiff asked Ms.
Dunn to complete disability paperwork based on her alleged bipolar disorder.  Ms. Dunn

13

refused because the diagnosis was not clear and because Plaintiff insisted that "her symptoms [were] helpful and [she had] no intention of treating them." (AR 22, 294.) Plaintiff again sought a disability determination in January 2008 based on bipolar disorder and lupus, but the physician's assistant[7] noted that she was refusing treatment and medications, and commented: "I would not support disability for this [patient] at this time." (AR 22, 245.) The ALJ also cited a June 2008 note by the same physician's assistant who suspected that Plaintiff's physical complaints were motivated by attempts to seek disability so that she would not have to work. *See* AR 501 (noting that Plaintiff "may be looking for secondary gain as [she has made] multiple previous attempts at disability from work for different reasons."). The record reveals additional instances where Plaintiff raised the issue of disability with her providers. *See, e.g.,* AR 478 (Plaintiff reiterated to Ms. Dunn "her desire to be eligible for disability, in order to pursue her creative passions without the stress of finding work."). Indeed, Plaintiff expressed her desire for disability payments so that she would have some income and would not have to work at "slave labor" jobs. (AR 232.) The ALJ properly took these requests into consideration. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003); *Metz*, 2010 WL 2243343, at *15. Substantial evidence thus supports the ALJ's conclusion that Plaintiff's testimony concerning her physical and mental limitations was not credible.

### C. Whether the ALJ Erred in Finding that Plaintiff Could Perform her Past Relevant Work or Other Work.

Plaintiff argues that "[w]hen the vocational expert [who testified at the hearing before the ALJ] was asked a hypothetical [question] based upon the vocational evidence and the mental health limitations outlined by Ms. Dunn, the vocational expert opined that plaintiff would not be able to perform any work in the national economy. The ALJ makes no mention of this testimony in his findings." (Doc. 9-1 at 16-17.) She also asserts that her prior work as a housekeeper was an unsuccessful work attempt, her work

---

[7] The ALJ attributed this medical note to Dr. Rapaport rather than to Sarah Bushweller, a physician's assistant at the Montpelier Health Center where Dr. Rapaport worked. *See* AR 245. This mistaken attribution goes to the weight of the observation, not its relevance.

14

at Dunkin' Donuts was below substantial gainful activity, and neither job should have been considered past relevant work.

The Commissioner responds that the ALJ found that Plaintiff did not have the limitations included in the hypothetical, and therefore did not err in failing to consider the vocational expert's response. With regard to which jobs should have been considered past relevant work, the Commissioner points out that, even accepting Plaintiff's characterizations of her housekeeping and Dunkin' Donuts jobs, substantial evidence supports both the ALJ's finding that Plaintiff could return to her past work as a data entry clerk, and the ALJ's alternate finding that jobs existed in significant numbers in the national economy that Plaintiff could perform, even with her limitations.

A "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (citation omitted). There must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Dumas*, 712 F.2d at 1554 (footnote omitted). Here, the ALJ was not obliged to accept the hypothetical opinions of a vocational expert based upon facts and circumstances the ALJ found had not been established. *See Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (stating that an ALJ "may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence and accurately reflect the limitations and capabilities of the claimant involved[.]") (citations omitted); *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (holding that ALJ was not bound to accept as true restrictions set forth in a hypothetical question if they were not supported by substantial evidence).

Plaintiff does not challenge the ALJ's further finding that she could do her past relevant work.[8] Rather, she argues that the ALJ should not have considered her work at

---

[8] Past relevant work is "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). Substantial gainful activity, in turn, is defined as "work activity that is both substantial and gainful[.]" 20 C.F.R. § 404.1572. Substantial work activity is defined as

Dunkin' Donuts and her work as a housekeeper in his analysis. Even assuming the ALJ should not have considered these two occupations, Plaintiff has not argued, much less established, that she could not do her past relevant work as a data entry clerk, or that substantial evidence does not support the ALJ's finding. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (holding that ALJ's determination that claimant retained sufficient RFC to perform some, but not all, of her past relevant work was supported by substantial evidence); *see also Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (observing that claimant had burden to prove that her limitations rendered her unable to perform her past relevant work). Moreover, Plaintiff's past relevant work as a data entry clerk comports with Plaintiff's RFC, as determined by the ALJ, and takes into consideration Plaintiff's impairment with daily living which limits her ability to deal with the general public. Finally, the ALJ made alternative findings at step five that other jobs existed in the national economy that Plaintiff could also perform. Plaintiff does not challenge those findings.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS the Defendant's motion for an order affirming the decision of the Commissioner, and DENIES the Plaintiff's motion to reverse and remand.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 16ᵗʰ day of June, 2011.

Christina Reiss, Chief Judge
United States District Court

---

"work activity that involves doing significant physical or mental activities," and gainful work activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(a), (b).